UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRINA SOLAR US, INC., | Case No. 2:20-CV-1308 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| RICHARD CARSON-SELMAN, et al., | |
| Defendant(s). | |

Presently before the court is defendants Richard Carson and Jolande Carson-Selman's (collectively "defendants") motion to dismiss. (ECF No. 4).[1]  Plaintiff Trina Solar US, Inc. ("Trina") responded in opposition (ECF No. 14) to which defendants replied (ECF No. 15).

Also before the court is defendants' motion to exceed the page limit for their motion to dismiss. (ECF No. 7).[2]

**I.      Background**

This case involves a solar panel deal gone bad and the solar panel company's efforts to collect on a $1.3 million dollar judgment.  Trina is a California company that manufactures and sells solar panels. (ECF No. 4 at 3).  JRC Services LLC ("JRC") is a Nevada LLC that provides marking, sales, and administrative support services to a Swiss credit card processing company. (ECF No. 1 ¶ 17).  JRC was as an intermediary for a solar panel deal between Trina and Jasmin Solar Pty Ltd, an Australian company. (ECF No. 4 at 3).  Trina alleges the following:

---

[1] ECF Nos. 8 and 10 are corrected images/documents of defendants' motion to dismiss at ECF No. 4.  The court uses ECF No. 4 to cite to the motion.

[2] ECF No. 11 is a corrected image/document of defendants' motion to exceed the page limit at ECF No. 7.  The court uses ECF No. 7 to cite to the motion.

**James C. Mahan**
**U.S. District Judge**

On or about November 20, 2012, Richard Carson, the sole managing member of JRC, entered into an agreement on behalf of JRC to purchase solar panels from Trina. (ECF No. 1 ¶¶ 10, 18). Trina delivered the solar panels but was never paid for them. (*Id.* ¶ 11). On January 18, 2017, judgment was entered confirming a $1,305,131 arbitration award against JRC and Jasmin Solar in the Southern District of New York. (*Id.* ¶¶ 12–13). The Second Circuit amended the judgment by removing Jasmin Solar and the amended judgment was registered in this district on June 10, 2020. (*Id.* ¶¶ 14–15).

Despite representing to Trina that JRC was a viable company that could purchase the solar panels, Carson described JRC as "a nothing company" in his debtor's examination. (*Id.* ¶ 19). The "shell and sham" LLC never conducted any day-to-day business operations, had an operating agreement, or observed any corporate formalities. (*Id.* ¶ 48). It never held regular member meetings, produced annual reports, filed tax returns, or had a formal issuance of membership interest. (*Id.* ¶¶ 20–29).

JRC ceased operations sometime in late 2010 to early 2011. (*Id.* ¶ 16). By 2012, JRC had no assets. (*Id.* ¶ 19). JRC has been "a revoked entity and has not been legally able to do business since July 31, 2017." (*Id.* ¶ 69). Carson used JRC "as a device to avoid individual liability for the purpose of substituting a financially insolvent LLC in place of himself." (*Id.* ¶ 48). Richard and Jolande Carson obtained a "sham divorce" in March 2009 to avoid paying creditors as well. (*Id.* ¶¶ 30–34). Richard is also the settlor, co-trustee, and beneficiary of the Limelight Trust which he also uses to avoid paying creditors. (*Id.* ¶¶ 34–40).

Trina alleges three claims for relief. First, its $1,305,131 judgment against JRC is enforceable against Richard Carson and Limelight Trust based on an alter ego theory of liability. (*Id.* at ¶¶ 41–56). Second, there were fraudulent transfers between JRC, Carson, his ex-wife Jolene, and Limelight Trust to avoid payment of Trina's judgment against JRC in violation of Nevada's Uniform Fraudulent Transfers Act, Nev. Rev. Stat. § 112.210. (*Id.* at ¶¶ 57–65). Third, because Carson "has continued to participate under the name of JRC in arbitration and litigation against Trina" when JRC was a revoked company, he is jointly and

severally liable for Trina's judgment against JRC under Nev. Rev. Stat. § 86.361. (*Id.* at ¶¶ 66–74).

Defendants Richard Carson and Jolande Carson-Selman now move to dismiss Trina's claims on various grounds, including failure to state a claim under Rule 12(b)(6), failure to plead fraud as required under Rule 9(b), statute of limitations, laches, and claim splitting. (ECF No. 4).

## II.   Legal Standard

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The court typically may not consider material beyond the pleadings to evaluate a complaint's legal sufficiency under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d). But the court

can consider exhibits attached to the complaint or matters properly subject to judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Under the incorporation by reference doctrine, the court can also consider documents whose contents are alleged in a complaint and whose authenticity no party questions but which are *not* attached to the complaint. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

**III.  Discussion**

  **A.  Preliminary Matters: Page Limit and Choice of Law**

As a first preliminary matter, defendants' motion to exceed the page limit for their motion to dismiss is granted. (ECF No. 7). Motions to exceed page limits are disfavored and should not be routinely granted. LR 7-3(c). The page limit for a motion to dismiss is twenty- four pages. LR 7-3(b). Defendants ask to exceed the page limit by nine pages because this case involves "numerous legal and procedural items" and multiple proceedings spanning multiple jurisdictions. (ECF No. 7 at 2). Because there is good cause and defendants have complied with the procedures in LR 7-3, the motion (ECF No. 7) is granted. LR 7-3(c).

As a second preliminary matter, the court must decide a choice of law question. *See Thornell v. Seattle Service Bureau, Inc.*, 742 F. Appx. 189, 193 (9th Cir. 2018) ("[D]etermining which state's law applies is appropriate at the motion to dismiss stage, if the pleaded facts allow it."). This is a diversity action with three purely state law claims so the court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties agree that the court should apply Nevada law. (ECF No. 4 at 9–10; ECF No. 14 at 5).

  **B.  Alter Ego Liability Claim against Carson**

The elements of alter ego liability under Nevada law are: "(1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must

James C. Mahan
U.S. District Judge

- 4 -

be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846–47 (Nev. 2000).   The court considers the following fact-intensive factors in deciding whether to pierce the corporate veil: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities.  *Id.* at 847.

The Nevada Supreme Court recently decided that alter ego liability can be a separate cause of action and not only a theory of liability. *Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911, 1 (Nev. 2019) (unpublished table decision) (opining in response to certified questions that "the alter ego doctrine can be a separate cause of action when the claim is filed as a means for a judgment creditor to pursue the execution of a prior judgment"). Defendants do not rebut Trina's invocation of *Magliarditi*.  (*See* ECF No. 15 at 3).

Trina must specifically allege all three elements of alter ego liability and facts that support each element.  *Donovan v. Flamingo Palms Villas, LLC*, No. 2:08-cv-01675-RCJ-RJJ, 2009 WL 10693913, at *6 (D. Nev. June 23, 2009).   Trina properly alleges the three required elements.  (ECF No. 1 ¶¶ 42, 43, 49).  As to the factual support for each element, Trina relies almost exclusively on a debtor examination of Carson.[3]   In the debtor's examination, Carson allegedly admits that JRC: (1) was "a nothing company" at the time it contracted with Trina, (2) was solely owned and managed by Carson, (3) never held any shareholder meetings, (4) never had a formal issuance of membership interest, (5) never filed any corporate tax returns, (6) never had its own address, (7) never had an operating agreement, and (8) never had any assets during its lifespan. (*Id.* at ¶¶ 19–30).

These admissions are enough factual support to properly allege that JRC is "influenced and governed" by Carson and is "inseparable" from him.  *See Hall v. High Desert Recycling, Inc.*, No. 03:11-cv-00137-LRH, 2011 WL 5373787, at *2 (D. Nev. Nov. 4,

---

[3] The debtor examination of Carson is not attached to Trina's complaint. Under the incorporation by reference doctrine, the court can consider documents whose contents are alleged in a complaint and whose authenticity no party questions but which are not attached to the complaint. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

**James C. Mahan**
**U.S. District Judge**

1  2011) ("Allegations of two or three [of the aforementioned fact-intensive] factors have been
2  held sufficient to defeat a 12(b)(6) motion to dismiss.").

3  As to the third element—sanctioning fraud or promoting injustice—defendants say
4  that the mere difficulty of enforcing a judgment is not enough to pierce the corporate veil.
5  (ECF No. 4 at 13 (quoting *Hall*, 2011 WL 5373787, at *3)).  In response, Trina points to the
6  Nevada Supreme Court's decision in *LFC Mktg. Grp., Inc. v. Loomis*.  8 P.3d 841 (Nev.
7  2000).  There the court reverse pierced the corporate veil after finding that a creditor's
8  inability to recover a judgment for over three years "despite [the debtor] being the
9  dominating force behind a Nevada corporation" constituted fraud or injustice  *Id.* at 905.

10  Here, Trina alleges that it "has had a judgment against JRC for more than three years,
11  but has been unable to collect, while [Carson], the alter ego of JRC, has gone unscathed
12  despite his representations . . . that JRC was a viable entity." (ECF No. 14 at 8; *see also* ECF
13  No. 1 ¶¶ 49–52).  Based on *LFC Marketing*, Trina has properly alleged and factually
14  supported the third element of its alter ego liability claim.

15  In sum, "receiving product on behalf of one's company" or "being a one-man
16  corporation" is not enough to allege alter ego liability.  (ECF No. 4 at 12).  But Trina has
17  alleged much more than that.  And defendants do not rebut Trina's invocation of *Magliarditi*.
18  Thus, Trina's first claim for relief can proceed.

19  **C.  Fraudulent Transfer Claims against Carson and Carson-Selman**

20  Defendants argue that Trina does not meet the heightened pleading standard for fraud
21  claims under Federal Rule of Civil Procedure 9(b).  Nevada law provides for claims of *actual*
22  fraudulent transfers and *constructive* fraudulent transfers.  *See Herup v. First Boston Fin.,*
23  *LLC*, 162 P.3d 870, 873 (Nev. 2007).  A transfer is actually fraudulent "if the debtor made
24  the transfer or incurred the obligation [w]ith actual intent to hinder, delay or defraud any
25  creditor of the debtor." Nev. Rev. Stat. § 112.180(1)(a).  A transfer is constructively
26  fraudulent if: (1) the debtor did not receive reasonably equivalent value in exchange for the
27  transfer and (2) the debtor "[i]ntended to incur, or believed or reasonably should have
28

James C. Mahan
U.S. District Judge

- 6 -

1 believed that the debtor would incur, debts beyond his or her ability to pay as they became
2 due." Nev. Rev. Stat. § 112.180(1)(b); *see also Herup*, 162 P.3d 873 n.12.

3       In other words, constructive fraud claims are not based on fraudulent intent but on the "the debtor's financial condition and the sufficiency of the consideration provided by the transferee." (ECF No. 14 at 11). That is why unlike actual fraud claims, constructive fraud claims do not need to be pleaded with particularity under Rule 9(b). *Allstate Ins. Co. v. Nassiri*, No. 2:15-cv-01434-GMN, 2017 WL 627215, at *2 (D. Nev. Feb. 15, 2017); *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD, 2015 WL 1609828, at *2 (D. Nev. Apr. 10, 2015). *But see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that when the plaintiff's claims are grounded in fraud, the entire complaint must be pleaded with particularity); *Ernest Bock, L.L.C. v. Steelman*, No. 2:19-cv-01065-JAD-EJY, 2020 WL 4331529, at *4 (D. Nev. July 27, 2020) (holding that both actual and constructive fraud are subject to Rule 9(b)'s heightened pleading standard).

14       Trina appears to be alleging actual fraud. Its complaint generally invokes Nev. Rev. Stat. § 112.210 and neither of the aforementioned subprovisions defining actual and constructive fraud. (ECF No. 1 ¶ 64). And Trina's opposition to dismissal suggests likewise. (*See e.g.*, ECF No. 14 at 11 (invoking Nev. Rev. Stat. § 112.210(1)(a) and listing "badges of fraud" in the complaint that "give rise to a strong inference of fraudulent intent"); *Id.* at 13 ("Plaintiff has outright plead Richard's fraudulent intent . . .")).

20       Irrespective of whether the Rule 9(b) heightened pleading standard applies[4], Trina's fraudulent transfer claims are insufficiently pled. *Cf. Takiguchi,* 2015 WL 1609828, at *2 ("[P]laintiffs' actual fraudulent transfer claim is subject to Rule 9(b) . . . Because that claim

---

[4] Trina argues that allegations of actual fraud require pleading only the mental state with heightened particularity: "While an NRS 112.180(1)(a) fraudulent transfer when based on fraud is held to a Rule 9(b) standard, it need not go so far as set forth in *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994), to specify statements, identity speakers, state where the statements were made, and explain why they were fraudulent, because it is not that type of fraud. Instead, a fraudulent transfer claim is required to plead only the requisite mental state with particularity. (ECF No. 14 at 11–12 (internal quotation marks omitted)). The court is not persuaded and will instead follow the lead of the court in *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-cv-01183-JAD, 2015 WL 1609828, at *2 (D. Nev. Apr. 10, 2015).

James C. Mahan
U.S. District Judge

- 7 -

lacks detail as to the particular fraudulent transfers—specifically the dates, amounts and specific recipient of each allegedly fraudulent transfer—plaintiffs' claim of actual fraudulent transfer is insufficiently pled."). Merely stating that Carson "has received funds and assets from JRC which were transferred to him in order to avoid payment of Trina's judgment against JRC" and that his divorce was a "sham" cannot survive dismissal. (ECF No. 1 ¶¶ 58, 60–62).

And Trina's alleged "badges of fraud" that "give a strong inference of fraudulent intent" are far less than the pleaded allegations in *Cendant Corp. v. Shelton*, a case that Trina heavily relies on to oppose dismissal. *See Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 381 (D. Conn. 2007) ("The plaintiff identified the date of the transaction and the parties to the transaction, and it made specific factual allegations that give rise to a strong inference of fraudulent intent.").

Trina is granted leave to allege its fraudulent transfer claims against Carson and Carson-Selman with the requisite specificity. *See* Fed. R. Civ. P. 15(a)(2). Amendment would not be futile here. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The court disagrees that Trina's fraudulent transfer claims must be dismissed with prejudice because Nevada's Uniform Fraudulent Transfers Act reaches transfers by debtors and only JRC, not Carson or Carson-Selman, is a debtor of Trina. (ECF No. 4 at 15–16 (citing *US Bank National Assoc. for Merrill Lynch Mortg. Investors Trust v. BDJ Investments, LLC*, 2018 WL 4705525 (D. Nev. 2018)).

The fraudulent transfer statute provides that a creditor may obtain "avoidance of the transfer, an attachment or garnishment of the asset, or other property of the transferee, an injunction against both the debtor and transferee, and any other relief as circumstances may require." (ECF No. 14 at 10). It also allows judgment to be entered against "(a) [t]he first transferee of the asset or the person for whose benefit the transfer was made; or (b) [a]ny subsequent transferee other than a transferee who took in good faith for value or from any subsequent transferee." Nev. Rev. Stat. § 112.220(2); *see also Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1053 (Nev. 2015) ("There is generally no personal action

against transferees unless specially authorized by statute. As an exception to the general rule, [Nev. Rev. Stat. § 112.220(2)] permits actions resulting in judgments against certain transferees." (internal citations omitted)).

Therefore, the statute clearly contemplates remedies for creditors like Trina against certain transferees which may include Carson and Carson-Selman. Trina is granted leave to amend its second claim for relief.

### D. Personal Liability Claim against Carson

Trina alleges that Carson assumed to act as JRC by "particpat[ing] under the name of JRC in arbitration and litigation" when it was a revoked company. (ECF No. 1 ¶ 70). Because JRC was a revoked company, Carson had no authority to act and is jointly and severally liability for all the debts and liabilities of JRC which include Trina's judgment.[5] (*Id.* ¶ 71 (citing Nev. Rev. Stat. § 86.361)). JRC has been a revoked company unable to transact business since July 31, 2017, while Trina's final arbitration award was entered on January 21, 2016 and confirmed on January 18, 2017. (*Id.* at ¶¶ 11–12, 69).

The case law on personal liability under Nev. Rev. Stat. § 86.361 is scant and the parties' briefing on the statute is rather conclusory. The court in *Nichiryo Am., Inc. v. Oxford Worldwide, LLC* avoided the question presented here: "The court need not answer the question of whether an individual can be liable for the debts of a revoked limited liability company that were incurred *before* the company forfeited its right to transact business" because the LLC's status was reinstated and the reinstatement had retroactive effect. No. 3:07-cv-00335-LRH-VPC, 2008 WL 2457935, at *3 (D. Nev. June 16, 2008) (emphasis added).

But *AA Primo Builders, LLC v. Washington* is instructive here. 245 P.3d 1190 (Nev. 2010). There the Nevada Supreme Court held that because "a dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it," an LLC's right to sue and be sued survived the

---

[5] Nev. Rev. Stat. § 86.361 provides that "[a]ll persons who assume to act as a limited-liability company without authority to do so are jointly and severally liable for all debts and liabilities of the company."

revocation of its charter. *Id.* at 1196. This means that Carson acted with authority when he "continued to participate under the name of JRC in arbitration and litigation" despite JRC's revoked status at the time. (ECF No. 1 ¶ 70). Therefore, Trina's third claim for relief is dismissed with prejudice.

### E. Statute of Limitations and Laches

Defendants say that Trina's entire case is barred by statutes of limitations and laches. (ECF No. 4 at 27–30). The court disagrees. The Nevada Supreme Court in *Magliarditi* contemplated that an alter ego liability claim could be brought post-judgment, stating that "a judgment creditor may bring a claim for alter ego to make a third party liable on the judgment." *Magliarditi*, 450 P.3d 911 at 1. Trina's amended judgment was issued on May 19, 2020, the judgment was registered in this district on June 10, and Trina filed this case on July 16. (ECF No. 14 at 17).

Furthermore, given the lack of specificity as to Trina's fraudulent transfer claims, the court will not consider at this juncture whether transfers pursuant to the Carsons' "sham divorce" could be fraudulent and whether the statute of limitations or equitable tolling apply.[6] *See generally Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (holding that a claim can be dismissed as time barred only when "the running of the statute is apparent on the face of the complaint."). Trina appears to be alleging that fraudulent transfers occurred from as early as 2009 up to the present. (ECF No. 1 ¶¶ 31, 34).

As to laches, defendants have not shown that they suffered the required prejudice. "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps on his rights.' " *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1121, 1126 (9th Cir. 2012) (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001)). Defendants must show "both an unreasonable delay

---

[6] The statute of limitations for fraudulent transfer claims is four years after the transfer was made or obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered. Nev. Rev. Stat. § 112.180.

by the plaintiff and prejudice to itself." *Id.* (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)).

The condition of the party asserting laches must become so changed that the party cannot be restored to its former state. *Carson City v. Price*, 934 P.2d 1042, 1043 (Nev. 1997) (quoting *Building & Constr. Trades v. Public Works*, 836 P.2d 633, 636–37 (1992)). Laches is more than mere delay in enforcing one's rights; it is a delay that works to the disadvantage of another. *Id.* Because defendants have not shown that they suffered a high level of prejudice because of Trina's alleged unreasonable delay in bringing this case, their laches affirmative defense is denied without prejudice. (*See* ECF No. 29 at 30).

### F. Claim Splitting

Defendants also say that Trina's entire case is barred by claim splitting. (ECF No. 4 at 31). The claim splitting doctrine recognizes that there is "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (internal quotation marks and citations omitted), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

The court "borrow[s] from the test for claim preclusion" and considers whether the cases at issue involve (1) the same parties or privies and (2) the same causes of action and relief sought. *Id.* at 688–89. To assess the similarity of the causes of action, the court considers:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). Defendants briefly argue that Trina could have and should have petitioned the arbitrator to hold Carson personally liable or brought claims against Carson when the arbitration award was being litigated in the Second Circuit. (ECF No. 4 at 1). "The dispute

James C. Mahan
U.S. District Judge

between JRC and Trina has been well-vetted in an extremely costly and apropos litigation that was rife with opportunity for Trina to pursue [Carson] for personal liability." (ECF No. 15 at 2).  But Carson was not a party to the arbitration because he was not a party to the arbitration agreement.  (ECF No. 14 at 17).

And the arbitration and subsequent litigation established that JRC is liable to Trina. In contrast, this case involves entirely new evidence regarding whether Carson should be held personally liable; it does not destroy or impair prior established rights and interests either.  And as aforementioned, the Nevada Supreme Court in *Magliarditi* determined that "a judgment creditor may bring a claim for alter ego to make a third party liable on the judgment."  *Magliarditi*, 450 P.3d 911 at 1.  Therefore, this case is not barred by claim splitting.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to exceed the page limit for their motion to dismiss (ECF No. 7) be, and the same hereby is, GRANTED.

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 4) be, and the same hereby is, GRANTED in part and DENIED in part.

Trina's first claim for relief against Carson can proceed.  Trina's second claim for relief against Carson and Carson-Selman is dismissed without prejudice with leave to amend. Trina's third claim for relief against Carson is dismissed with prejudice.

DATED December 14, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**